**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

NOV 7 2019

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| HUMBERTO MARTIN-PEREZ, | No.   16-71722 |
| Petitioner, | Agency No. A088-923-390 |
| v. | |
| WILLIAM P. BARR, Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted November 4, 2019[**]
Pasadena, California

Before:  SCHROEDER and FRIEDLAND, Circuit Judges, and ROSENTHAL,[***]
District Judge.

Humberto Martin-Perez, a native and citizen of Mexico, petitions for review

of an order of the Board of Immigration Appeals ("BIA") affirming an

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***]      The Honorable Lee H. Rosenthal, Chief United States District Judge for the Southern District of Texas, sitting by designation.

Immigration Judge's ("IJ") denial of his motion to suppress and terminate removal proceedings. We have jurisdiction under 8 U.S.C. § 1252. We review *de novo* the denial of a motion to suppress and claims of constitutional violations. *Martinez-Medina v. Holder*, 673 F.3d 1029, 1033 (9th Cir. 2011). We deny the petition.

Martin-Perez argues that the BIA erred in denying his motion to suppress and terminate the removal proceedings because the evidence the Government submitted to prove his alienage was the product of a stop and arrest that violated the Fourth Amendment. Martin-Perez alleges that he was walking to work on the evening of November 27, 2012, when two Customs and Border Protection agents in a patrol car pulled up next to him and—solely because of his perceived Mexican ethnicity—ordered him to stop. He panicked and ran, but he was followed and arrested. After acquiring Martin-Perez's name, photograph, and fingerprints, the Government located its existing records of a 2008 deportation of Martin-Perez and used those records to establish his alienage in the removal proceedings that followed.

The IJ and BIA did not err in denying Martin-Perez's motion to suppress, even assuming that his stop and arrest violated the Fourth Amendment and that the Government would not have found his 2008 records had it not learned his identity as a result of the arrest. The identity of an individual in immigration proceedings is not suppressible, even if it came to be known through an egregious constitutional

violation.[1] *See United States v. Del Toro Gudino*, 376 F.3d 997, 1001 (9th Cir. 2004). And "there is no sanction to be applied when an illegal arrest only leads to discovery of the man's identity and that merely leads to the official file or other independent evidence" of alienage. *Id.* (quoting *United States v. Orozco-Rico*, 589 F.2d 433, 435 (9th Cir. 1978)). The evidence of Martin-Perez's alienage from his 2008 file was not suppressible.

Martin-Perez contends that an exception to the no-suppression rule for identity evidence exists when the underlying "seizure was race-based." But *Del Toro Gudino* rejected that exact argument. The non-citizen there "argued that [his] particular stop and arrest were founded solely on [his] 'Hispanic appearance,' and thus constituted an 'egregious' violation of the Fourth Amendment to which the non-suppression-of-identity rule . . . did not apply." *Id.* at 998. We disagreed, clarifying that "the simple fact of who a defendant is cannot be excluded, regardless of the nature of the violation leading to [the discovery of] his identity."

---

[1] We derived this no-suppression rule from the Supreme Court's statement in *INS v. Lopez-Mendoza*, 468 U.S. 1032 (1984), that "[t]he 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest." *Id.* at 1039. As Martin-Perez points out, and we have recognized, several other circuits "have held that *Lopez-Mendoza* 'merely confirmed the jurisdictional rule that an unlawful arrest has no bearing on the validity of a subsequent proceeding,' rather than 'creat[ing] an evidentiary rule insulating specific pieces of identity-related evidence from suppression.'" *Perez Cruz v. Barr*, 926 F.3d 1128, 1136 n.3 (9th Cir. 2019) (alteration in original) (quoting *Pretzantzin v. Holder*, 736 F.3d 641, 646-47 (2d Cir. 2013)). "We are bound, however, by our somewhat broader interpretation of *Lopez-Mendoza*." *Id.*

*Id.* at 1001. The two cases Martin-Perez cites in support of his contrary position are inapposite because they involved the suppression of direct evidence of alienage, not identity evidence. *See Orhorhaghe v. INS*, 38 F.3d 488, 492 (9th Cir. 1994); *Gonzalez-Rivera v. INS*, 22 F.3d 1441, 1443 (9th Cir. 1994).

Finally, Martin-Perez asserts that a remand is required for the BIA to reconsider his motion to suppress because his previous counsel was ineffective in failing to assemble sufficient evidence to support the motion. We are not persuaded. A non-citizen in removal proceedings asserting an ineffective assistance of counsel claim "must . . . show 'substantial prejudice' by demonstrating that 'the alleged violation affected the outcome of the proceedings.'" *Torres-Chavez v. Holder*, 567 F.3d 1096, 1100 (9th Cir. 2009) (quoting *Lara-Torres v. Ashcroft*, 383 F.3d 968, 973 (9th Cir. 2004)). Because Martin-Perez's immigration records were not suppressible, the outcome of his proceedings would not have changed even if his counsel had introduced enough evidence to establish that Martin-Perez's arrest amounted to an egregious Fourth Amendment violation.

**PETITION DENIED.**

4